LOUNSBURY, Administrator, Respondent, vs. DAVIS and others, Appellants.

*February 22—March 14, 1905.*

*Master and servant: Negligence: Death of servant: Fall of derrick in quarry: Assumption of risk: Court and jury: Special verdict: Instructions: Evidence: Pleading: Surplusage.*

1. Upon evidence tending to show that the fall of a derrick in a quarry, whereby an employee therein was killed, resulted from the negligent fastening of a guy anchor under the personal direction of one of the employers; that the deceased had nothing to do with such fastening; and that it was not within his observation in the usual course of his employment, the question whether deceased had assumed the risk is *held* to have been one for the jury.

2. In the absence of any request for specific instructions or the submission of a separate question as to assumption of risk, the failure to submit that issue otherwise than as it was included in the question whether deceased was guilty of contributory negligence, was not error.

3. It appearing from the evidence that the fall of the derrick was due either to the overloading thereof or to the pulling out of the guy anchor at the point where it was weighted down, it was not error to refuse an instruction that if it was as probable that the accident resulted from an unknown cause as from any cause charged, then defendants cannot be said to have been guilty of negligence in respect to any cause charged.

4. It was error to permit a witness to testify that the guy anchor pulled out because there was not stone enough weighting it down, since he thereby gave his opinion upon a question to be passed upon only by the jury.

5. The exclusion of evidence tending to show that it was the duty of the deceased, as a foreman, to look after the security of the guy anchor, was error.

6. Where, in an action for death negligently caused, the complaint stated fully all the facts constituting a cause of action under secs. 4255, 4256, Stats. 1898, in favor of the surviving widow, it was proper to treat as surplusage a statement at the close that by reason of the death of the intestate "*his estate was* damaged," etc.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This is an action to recover damages upon the ground that defendants' negligence caused the death of plaintiff's intestate. It is alleged that plaintiff is the administrator of the estate of Carl Strube, deceased, and that *Edgar P. Davis* and *Charles H. Davis* are the executors of the last will and testament of James E. Davis, deceased; that at the time in question *Charles H. Davis* and James E. Davis were copartners under the firm name of Davis Bros.; that they were the owners of a stone quarry and conducted a quarry business at Menomonee, Waukesha county; that Carl Strube, the deceased, was on the 8th day of July, 1901, and for a long time prior thereto had been, in the employ of and engaged in this business of the Davis Bros.; that he was fifty-six years of age, able-bodied and healthy, and able, up to the time of his death, to do all kinds of manual labor and to earn the wages of a good and competent workman; that his wife, Hannah, and two minor children survive him; and that he maintained and supported his family.

It is further alleged that the deceased, Carl Strube, was injured through defendants' negligence on July 8, 1901, while engaged in defendants' quarry, the injuries resulting in his immediate death. The negligence charged is alleged to have consisted in a negligent and careless construction and erection of a derrick used in conducting and operating the defendants' quarry business. It is averred that a certain cable or guy rope, running from the top of the center piece or mast of the derrick to the ground, where it was anchored or fastened so as to hold the derrick erect, was so carelessly and negligently fastened or anchored as to make it insufficient and insecure as an anchor and guy, thereby rendering the derrick unsafe and dangerous in conducting the usual business of hoisting stones from the quarry bed into cars for shipment or other purposes. It is claimed that the negligence of the

defendants caused the derrick to fall and thereby injure the plaintiff's intestate while he was engaged as an employee in conducting their business on the day in question.

It is admitted that defendants were a copartnership and owned the quarry and were engaged in the stone quarry business; that plaintiff's intestate was in their employ as a laborer in conducting the quarry business at the time and before the accident; and that he died from the effects of the injuries received at the time in question. There is no dispute but that his wife and a number of children, two of whom are minors, survived him, and that he maintained a household and applied his earnings to the support of himself and family.

It appeared in evidence that plaintiff's intestate had been in the employ of the defendants as a workman in the quarry a number of years prior to the time of the accident; that derricks were used in removing the stone from the quarry; that these derricks were moved from ledge to ledge from time to time as the quarrying progressed; and that the derrick in question was held erect by seven guys or wire cables, one end attached to the top of the center piece or mast, and the other end attached to an anchor placed on the ground at a distance of about 125 feet from the base of the derrick. These anchors, with the exception of two, were fastened and weighted down by stones in two tiers divided by the cable, piled on and in front of the anchors or "dead men." The anchor in question was so fastened and weighted on Saturday, July 6th, under the direction and supervision of *Charles H. Davis,* one of the defendants, after the derrick was moved from its former position. Carl Strube did not take part in the moving of the derrick or in fastening the anchor, nor did he subsequently observe how the one which pulled out or any other anchor had been fastened and weighted down by *Mr. Davis. Chas. H. Davis* and his brother had the charge and management of the quarry and the manner of prosecuting the quarrying. The labor in the quarry was carried on by two sets of workingmen

in charge of persons selected by defendants, called "block foremen," of whom Carl Strube was one, and in the absence of the Davis brothers these block foremen had charge of the employees and the quarrying in their respective blocks.

*Chas. H. Davis,* while testifying as a witness called by defendants, was asked the question: "If there is anything wrong with the derrick, has he [block foreman] any duty connected with it?" This question was excluded by the court upon objection. Charles Strube, a witness for plaintiff, upon direct examination was asked: "Could you tell why this dead man [anchor] pulled out, from your observation and experience—any observation you made of this very derrick in question? (Objection by defendants. Overruled.) *Answer.* Because there was not stone enough; else it would not have pulled out." It appeared that at the time of the accident the anchor of this guy cable had become freed by pulling out from under and through the pile of stone placed on and about it, and that when so freed the guy permitted the derrick mast with boom and loaded platform to fall, and that plaintiff's intestate was injured in attempting to escape from the perils of such falling apparatus.

The case was submitted to the jury upon special verdict, and it was therein found: (1) That Carl Strube died from the effects of the injuries received; (2) that the defendants were guilty of a want of ordinary care in not furnishing a reasonably safe derrick for use in conducting their quarry business; (3) that such negligence of defendants was the proximate cause of the death of plaintiff's intestate; (4) that the deceased was not guilty of any want of ordinary care; (5) that plaintiff's damages were $1,600. Judgment was awarded on this verdict for the damages and costs. This is an appeal from such judgment.

For the appellants there was a brief by *Roemer & Aarons,* and oral argument by *J. H. Roemer.*

For the respondent there was a brief by *Ryan, Merton & Newbury,* and oral argument by *C. N. Newbury.*

SIEBECKER, J.   Appellants contend that under the testimony there can be no dispute that the defective construction in weighting down and fastening the guy anchor was an open and obvious defect, of which respondent's intestate, as an experienced quarryman, must be presumed to have had knowledge, and that he therefore assumed the risk incident to the use of the derrick in conducting appellants' business.   We cannot accede to this view.   It appears that the deceased took no part in moving and resetting the derrick and guy anchors on the Saturday preceding the accident, nor does it appear that his attention was directed to the manner in which the anchors had been weighted down and fastened at that time. It is undisputed that one of the proprietors took full charge and direction of this moving and resetting of the derrick. From these circumstances it follows that it was appellants' duty to have the anchors so fastened as to make it reasonably safe for operating the derrick in the usual manner of conducting appellants' quarry business.   Deceased had the right to assume that they were so fastened and secured, in the absence of proof that he, in the exercise of reasonable care, ought to have observed it, or was charged with a duty as block foreman (to which reference will be made hereafter) to examine the apparatus.

It appears that the anchors were placed at a point about 125 feet from the derrick mast, and located outside of and beyond the field of operation on the ledges in the quarry, where the deceased and other employees were engaged in performing the usual work in conducting appellants' business. It does not appear that the deceased and the other employees in their daily occupations would or could readily observe the manner in which the anchors had been fastened and weighted down.   Since there is evidence tending to show that the accident to respondent's intestate resulted from a negligent fastening of the anchor by appellants, that the deceased had nothing to do with the fastening, and that it was not within his

observation in the usual course of his employment, it cannot be said as a matter of law that he had assumed the unusual dangers arising out of a negligent fastening of the anchors. In view of the evidence the question was one for the jury, under proper instruction by the court, as a species of contributory negligence, under the fourth question of the special verdict. In the case of *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554, this question was so fully considered and discussed that further elaboration is unnecessary at this time.

It is urged that the court should have submitted the issue of assumption of risk in a separate question in the special verdict. Counsel places reliance for such contention upon the cases of *Hennesey v. C. & N. W. R. Co., supra,* and *Dugal v. Chippewa Falls,* 101 Wis. 533, 77 N. W. 878. The cases do not justify the contention. As stated in the *Hennesey Case:*

"Had the jury been carefully instructed upon the question of assumption of risk, and plainly told that it was a species of contributory negligence, and that, if they found that deceased did assume the risk of such unusual danger, then he was in law guilty of a want of ordinary care, . . . there would probably be no error in refusing to submit the specific question asked for, because the issue would thus have been covered."

No such instructions were given in that case and none were requested by defendant, but it was there held that in the absence of such instructions a written request in the form of a special question on the issue was proper and took the place of a request to instruct on the subject. No specific instructions nor question were asked for by appellants in the instant case upon this issue.

It is further claimed that the court erred in refusing to give the following instruction as requested:

"If it is as probable that the accident resulted from an unknown cause as from any cause charged, then the defendants cannot be said to have been guilty of negligence in respect to any cause charged."

The proposition thus submitted may be correct as a statement of a rule of law, but it has no application to the facts and circumstances before us.   From the evidence adduced upon the trial there are, but two theories to account for the derrick's falling.   It was due to an overload which was being hoisted, or, if not to an overload, it must have been due to the fact that the anchor became detached and gave way at the point where it was weighted down.   These two theories were properly covered by the verdict and the charge given.

Error is assigned upon the court's ruling in the admission and rejection of evidence.   The witness Charles Strube was permitted over objection to answer the question: "Could you tell why this dead man pulled out, from your observation and experience—any observation you made of this very derrick in question?" to which he answered: "Because there was not stone enough; else it would not have pulled out."   It was proper for the witness to testify fully as to the manner in which the anchor was constructed, the quantity of stones that were piled thereon, to give a full description of the manner in which they were piled on and about the anchor, and of their displacement after the accident.   But this is the limit to which the evidence could properly be permitted to go.   This limitation was plainly transgressed in the foregoing inquiry, and the witness was called upon and permitted to give his opinion upon an ultimate issue in the case, which can only be resolved by the jury.   As stated in the case of *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72 N. W. 1124:

"The rule is that experts are not to decide issues of fact; hence all questions calling for opinion evidence must be so framed as not to pass on the credibility of any other evidence in the case, else it will usurp the province of the jury and the court."

The admission of this evidence was error.

Another exception urged to a ruling on evidence pertains to the exclusion of evidence offered by appellants on the subject

of the duty of respondent's intestate as block foreman. Tes-
timony was admitted descriptive of his duties while in the
charge and management of the quarry; but when evidence
was offered for the purpose of showing his duty in respect to
any defects or a dangerous condition of the apparatus outside
of his immediate surroundings in the quarry, it was excluded.
This ruling was clearly erroneous. Whether or not the de-
ceased, as block foreman, was charged with the duty of look-
ing after the security of the anchor, is a material and very
important question in view of respondent's claim that he was
free from contributory negligence.

Exception is taken to the court's construction of the com-
plaint in holding that the cause of action stated is one in favor
of the widow of the deceased under the statute, and not one in
favor of his estate. The distinctions between the two causes
of action were pointed out in *Brown v. C. & N. W. R. Co.*
102 Wis. 137, 77 N. W. 748. The complaint fully and ex-
plicitly states all the facts necessary to constitute the cause
of action for damages in favor of the widow. The pleader
at the close added the statement that by reason of the death of
respondent's intestate "his estate was damaged in the sum of
five thousand dollars." The court disregarded this allegation
and treated it as surplusage. This ruling was proper. A re-
jection of this statement in its entirety leaves a statement of
facts in the complaint which clearly constitutes a cause of ac-
tion under secs. 4255, 4256, Stats. 1898, in favor of the sur-
viving widow, as it was evidently intended by the pleader.

*By the Court.*—The judgment is reversed, and the cause
is remanded for a new trial.